Belknap County Probate Court
No. 7042

ESTATE OF ALICE BETTERS HARVILLE

August 29, 1975

*Warren B. Rudman,* attorney general, and *John T. Pappas,* attorney *(Mr. Pappas* orally), for the State.

*Harold E. Ekstrom,* guardian ad litem, by brief and orally, pro se.

*David E. Tardif,* administrator of the estate of Alice B. Harville, filed no brief.

DUNCAN, J. The dispute in this matter arises out of a petition for distribution of the assets of the estate of Alice B. Harville, and focuses on the liability of that estate for old-age assistance granted to the spouse of the decedent. RSA 167:14 (1964) provides that "[t]he estate of every recipient, and the estate of his or her spouse, residing with said recipient, if any, owned severally or as joint tenants, shall be holden for all assistance granted to the recipient." The guardian ad litem for the four heirs of Alice Harville does not challenge the State's right under this statute to recover assistance paid while she and her husband Guy were alive and residing together. He does, however, disclaim any continuing obligation of a spouse's estate for aid granted to a surviving spouse after a decedent's demise. On an agreed statement of facts, the Probate Court *(Tilton,* J.) reserved and transferred without ruling the following question, "Is the Estate of Alice B. Harville liable for old age assistance granted to the late Guy Lee Harville for the period of time after the date of death of the late Alice B. Harville?"

Alice B. and Guy L. Harville each received old-age assistance from the State of New Hampshire Department of Health and Welfare, Division of Welfare, from August 1, 1949, until their respective deaths on August 1, 1954, and January 31, 1972. Prior to those dates Alice Harville received a total of $3,390.50 in aid and her husband received a total of $25,396.05, of which $22,243.05 was granted after Alice's death in 1954. Pursuant to RSA 167:13 and :14, liens were recorded in 1949 against the Harville's Barnstead, New Hampshire home, which the two owned as tenants in common. After Alice died intestate, Guy remained in sole occupation of the premises. No administration of Alice's estate was sought at that time. On Guy's death, the property was sold for $25,750, which sum was divided equally between the two estates. The assets of Guy's estate were exhausted by the payment of expenses of administration and partial reimbursement of the assistance furnished to him. There remains

outstanding, however, a substantial sum for aid provided to Guy which the State seeks to recover in this proceeding from the estate of Alice.

*State v. Lipnick*, 99 N.H. 217, 219, 108 A.2d 41, 43 (1954), held: "The assistance granted is in the nature of a loan to be allowed as a claim against the recipient's estate, if any . . . ." The social policies favoring such legislation are threefold. First, it encourages needy people to seek employment or the aid of friends and relatives rather than welfare. Second, recovery laws are thought to make the welfare system more humane by avoiding compulsory liquidation of assets as a prerequisite to eligibility, and by alleviating the social stigma of being "on welfare." The third, and perhaps strongest, justification is the prevention of unjust enrichment of recipients and their heirs at taxpayers' expense. Boldus, *Welfare as a Loan: An Empirical Study of the Recovery of Public Assistance Payments in the United States*, 25 Stan. L. Rev. 123, 131 (1973).

In enacting RSA 167:14 (1964) the legislature combined the foregoing rationale with the doctrine of mutual support obligations under the marriage contract and thereby provided for the imposition of liens as well on property of the recipient's spouse as on that of the recipient himself. *See* H. Clark, Law of Domestic Relations § 6.1, at 186-87 (1968). Nevertheless, the language of the statute expressly conditions the imposition of such liens on the coresidency of the spouses. The phrase "his or her spouse, residing with said recipient" indicates the intention that a present, on-going relationship must exist between the recipient and his or her spouse if a lien is to attach. RSA 167:14 (1964); *cf. Doe v. State*, 114 N.H. 714, 717, 328 A.2d 784, 786 (1974); *Plymouth School Dist. v. State Bd. of Educ.*, 112 N.H. 74, 77, 289 A.2d 73, 75-76 (1972). Neither the statute nor the policies which occasioned it suggest that the estate of a deceased spouse should suffer on-going liability for loans made to the surviving spouse after the decedent's death. *State v. Lipnick*, 99 N.H. 217, 219, 108 A.2d 41, 43 (1954). RSA 167:14 (1964) indicates that any claims or liens incurred under RSA 167:13-14 (1964) continue during the "lifetime of the recipient" and of his or her spouse. Such language evidences an intent that the obligation of the spouse of the recipient for aid furnished the recipient should cease at the death of either. This interpretation not only is consistent with the principle of mutual marital support upon which RSA 167:14 (1964) is based, but by obviating any advantage to be gained by delaying probate it also encourages the expeditious settlement of estates. *White v. Chaplin*, 84

N.H. 208, 210, 148 A. 21, 22 (1929); 1 W. Treat, N.H. Probate Law § 251, at 236 (1968).

*Remanded.*

All concurred.